**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3293-17T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ISMAEL IGLESIAS-MONTIEL,

      Defendant-Appellant.

_____

Submitted June 4, 2019 – Decided July 10, 2019

Before Judges Fasciale and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Accusation No. 05-06-0746.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the January 11, 2018 Law Division order, denying his second petition for post-conviction relief. Defendant, a non-citizen, argues the PCR court erred in determining without an evidentiary hearing that he failed to establish a prima facie case of ineffective assistance of counsel under State v. Nunez-Valdez, 200 N.J. 129 (2009), and that his petition was time barred and not exempted from Rule 3:22-12's limitations. We disagree and affirm.

We derive the following facts from the record. On June 22, 2005, defendant entered a negotiated guilty plea to a one-count accusation, charging him with third-degree distribution of a controlled dangerous substance (CDS) within 1000 feet of a school zone, N.J.S.A. 2C:35-7. At the plea hearing, defendant admitted that on April 12, 2005, he sold less than fifty grams of marijuana to an undercover officer within 1000 feet of public school number six in the City of Passaic. On the written plea form, defendant responded "yes" to question seventeen, indicating he understood that "if [he was] not a United States citizen or national, [he] may be deported by virtue of [his] plea of guilty[.]"

During the plea colloquy, defendant further confirmed his understanding in response to the trial court's questioning as follows:

[COURT:] Where were you born?

[DEFENDANT:] Mexico.

2

. . . .

[COURT:] Are you legally in this country?

[DEFENDANT:] Yes.

[COURT:] Are you a naturalized citizen or do you have an alien registration card?

[DEFENDANT:] Well, I have permission to work.

. . . .

[COURT:] Do you understand that you could get deported for this?

[DEFENDANT:] Yes.

[COURT:] Do you understand that?

[DEFENDANT:] Yes.

Further, defendant told the court that he was pleading guilty voluntarily, he read and understood the plea form before he signed it, and he was satisfied with the services of his attorney. After pleading guilty, defendant waived a presentence report and was sentenced on the same day. Despite his prior municipal court convictions for possession of marijuana and simple assault, defendant was sentenced in accordance with the plea agreement to three years' probation, conditioned upon serving 270 days in the county jail. Defendant did

not appeal his conviction or sentence and incurred no new criminal charges thereafter.

Eleven years later, defendant received a Notice to Appear before an immigration judge for "removal proceedings under section 240 of the Immigration and Nationality Act[.]"  The Notice was dated July 6, 2016.  On October 17, 2016, defendant filed his first PCR petition, seeking to withdraw his guilty plea and asserting his plea counsel was ineffective by failing to provide him with immigration advice.[1]  Defendant explained he did not file his petition within five years of his conviction, as required under Rule 3:22-12, because he was unaware that he was deprived of his right to speak to an immigration attorney before pleading guilty until he was arrested by immigration authorities on July 6, 2016.

On May 3, 2017, following oral argument, the PCR court rejected defendant's contentions on both procedural and substantive grounds.  In an oral decision, the court determined that because defendant was "on notice" when he entered his plea "that he could be deported," defendant failed to establish either "excusable neglect or that enforcement of the time bar would result in a

---

[1]  Because defendant did not include the first petition in the record, we rely on the PCR court's description of its contents.

fundamental injustice" to overcome Rule 3:22-12's limitations. Further, the court found that because plea counsel did not "give incorrect advice . . . about the immigration consequences of his plea[,]" defendant did "not satisf[y] the first prong of the [Strickland v. Washington, 466 U.S. 668 (1984),[2]] test."

In that regard, the court rejected defendant's reliance on Padilla v. Kentucky, 559 U.S. 356 (2010), explaining that under State v. Gaitan, 209 N.J. 339 (2012), the imposition of an affirmative duty to advise on deportation consequences decreed in Padilla did not apply retroactively to defendant's 2005 conviction. The court also determined that Nunez-Valdez was inapplicable because defendant claimed plea counsel provided no advice, rather than the incorrect advice about deportation consequences outlawed under Nunez-Valdez. See 200 N.J. at 139-42. Thus, according to the court, defendant failed to present "a prima facie claim of ineffective assistance of counsel" entitling him to the relief sought.

Additionally, after evaluating defendant's motion to withdraw his guilty plea under the four factors enunciated in State v. Slater, 198 N.J. 145, 157-58

---

[2] To prevail on a claim of ineffective assistance of counsel (IAC), a defendant must satisfy a two-part test. Specifically, the defendant must show that his attorney's performance was deficient and that the "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. See State v. Fritz, 105 N.J. 42, 49-53 (1987) (adopting the Strickland two-part test for IAC claims).

A-3293-17T3

(2009), the court found no "manifest injustice" as required under Rule 3:21-1 to justify granting the motion. On the contrary, according to the court, "[d]efendant ha[d] not asserted any [colorable] claim of . . . innocence[,]" his "reason for withdrawal" was "without merit[,]" the guilty plea was the product of a "plea bargain," and the State would be "unfair[ly] prejudice[d]" if it had "to investigate and try a [twelve-]year[-]old case."

In July 2017, defendant filed a second petition for PCR, seeking to withdraw his guilty plea because his plea and first PCR counsel were ineffective. According to defendant, his plea counsel was ineffective "by advising [him] that he would not be deported as a result of th[e] small amount of marijuana" and "by not consulting with an immigration attorney." Defendant claimed his plea counsel was also ineffective by failing to file appropriate pre-trial motions and compel discovery. Additionally, defendant asserted his first PCR counsel was ineffective by failing to make appropriate "inquiry as to what [plea counsel] did and said to defendant" and by applying "the wrong standard" for ineffective assistance of counsel claims involving incorrect advice on immigration consequences.

In support, contrary to his first PCR petition, defendant certified that when he asked about the deportation consequences of a guilty plea, his plea counsel

informed him "that immigration would do nothing to [him] because the amount of pot was so small[, amounting to] . . . only one gram." Defendant averred "[he] was very concerned about [his] immigration status" because he "had a wife and a child" and "would [never] have pled guilty" had he known that his plea counsel's "advice was incorrect." According to defendant, "[he] would rather spend time in jail versus a lifetime in Mexico." Defendant also submitted supporting certifications from family members, including his wife, who was a United States citizen.

In addition, defendant submitted a certification prepared by his plea counsel stating:

> If . . . defendant had inquired as to the immigration consequences of this plea, I would have advised [him] that he would not be deported as a result of this distribution of a small amount of marijuana. This is based upon the fact that foreign nationals convicted of similar drug offenses in 2005 were NOT BEING DEPORTED. I knew of foreign nationals convicted of murder and armed robbery being deported but not for this type of "relatively minor" marijuana offense.

On January 11, 2018, following oral argument, the PCR court denied the application on procedural and substantive grounds without conducting an evidentiary hearing. In an oral decision, the judge determined that the second petition was time barred under Rule 3:22-4(b) and Rule 3:22-12(a)(2). Turning

to the merits, according to the court, "[plea counsel's] advice was based on his experience in handling . . . similar minor drug distribution cases in 2005." Thus, the court did not view plea counsel's statement in his certification as "misadvice."

The court elaborated that rather than giving defendant "inaccurate information . . . concerning the deportation consequences of his plea[,]"

> [plea counsel] advised him that he would not be deported as a result of [the] distribution of a small amount of marijuana because[,] in 2005[,] foreign nationals were not being deported for similar drug offenses. In 2005[,] deportation was not a serious issue. While distribution of CDS was deportable under Federal law, in practice[,] defendants were not being deported for minor marijuana offenses.

The court continued:

> [Plea counsel] practiced law in the manner that . . . other attorneys did at th[at] time. Defendant was not arrested by ICE[3] until July 6[], 2016, which is [eleven] years after he pled guilty. This in itself lends credence to the fact that the Federal government was simply not deporting people as a practical matter.

Moreover, according to the court, defendant was on notice of deportation consequences based on the fact that "[d]efendant answered yes to [q]uestion . . . [seventeen] on the plea form," and was advised by the court during the plea

---

3 Immigration and Customs Enforcement.

A-3293-17T3

colloquy that he "could get deported." Thus, similar to the first PCR, the court again concluded that defendant failed to satisfy the first prong of Strickland.

Addressing the second Strickland prong, the court was unpersuaded that but for plea counsel's advice, defendant would not have pled guilty. In that regard, the court explained:

> Defendant sol[d] marijuana to an undercover detective. And if convicted at trial would have . . . been subjected to a maximum sentence of five years in prison with the imposition of a minimum term of between . . . [one-]half to one[-]third of the sentence imposed, or one year, whichever was greater.
>
> The offer made to defendant at the pre-indictment court was probation with 270 days in the Passaic County Jail[,] concurrent to a violation of probation that might have been filed in the future. The transcript indicates during sentencing defendant was concerned with getting out of jail early so that he could spend more time with his daughter. . . .
>
> Defendant was concerned with minimizing his jail exposure. The bare assertion . . . that he would not have pled guilty if made aware of the proper consequences of pleading guilty is not convincing.
>
> The State had a strong case against defendant. And he received a favorable plea offer.

After rejecting defendant's remaining IAC claims, and incorporating the reasons set forth on the record in its May 3, 2017 decision, the court entered a memorializing order and this appeal followed.

A-3293-17T3

On appeal, defendant raises the following single point for our consideration:

> BECAUSE DEFENDANT PRESENTED A [PRIMA FACIE] CASE THAT HE WAS PREJUDICED BY FALSE ADVICE FROM HIS PLEA COUNSEL, THE LAW DIVISION'S ORDER DENYING HIS PCR PETITION WITHOUT AN EVIDENTIARY HEARING SHOULD BE REVERSED.

Merely raising a claim for PCR does not entitle the defendant to an evidentiary hearing. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie claim of IAC, material issues of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). A PCR court deciding whether to grant an evidentiary hearing "should view the facts in the light most favorable to a defendant." State v. Preciose, 129 N.J. 451, 463 (1992). In turn, we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing. State v. Marshall, 148 N.J. 89, 157 (1997); see also R. 3:22-10; Preciose, 129 N.J. at 462.

To establish a prima facie case of IAC to set aside a guilty plea, "a defendant must show that (i) counsel's assistance was not 'within the range of

10

competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" Nunez-Valdez, 200 N.J. at 139 (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). In other words, the defendant must show that not pleading guilty would have been "rational under the circumstances." State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014) (quoting Padilla, 559 U.S. at 372).

Because there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[,]" Strickland, 466 U.S. at 690, defendant bears the burden of proving both prongs of an IAC claim by a preponderance of the evidence. Gaitan, 209 N.J. at 350. Further, because prejudice is not presumed, Fritz, 105 N.J. at 52, the defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

Here, defendant asserts that plea "[c]ounsel's inexcusably false advice that the plea would not result in deportation induced [defendant] to accept a deal which he otherwise would have rejected." According to defendant, "[p]lea counsel's advice was affirmatively misleading and false, because deportation for

the offense was 'inevitable' as a matter of federal law." Thus, defendant continues, plea counsel rendered "constitutionally deficient" legal representation under Nunez-Valdez. We disagree.

In Nunez-Valdez, our Supreme Court held that a defendant could establish the deficiency prong of an IAC claim by proving that his guilty plea resulted from "inaccurate information from counsel concerning the deportation consequences of his plea." 200 N.J. at 143. The following year, in Padilla, the United States Supreme Court held that defense counsel's incorrect advice as well as counsel's failure to give any advice whatsoever about deportation constituted deficient performance sufficient to establish a constitutional violation where the relevant law pertaining to mandatory deportation is "succinct, clear, and explicit." 559 U.S. at 368-69.

In Gaitan, our Supreme Court held that because Padilla's imposition of an affirmative duty to advise on deportation consequences was a new constitutional rule, its holding applied prospectively only. Gaitan, 209 N.J. at 373. Accord Chaidez v. United States, 568 U.S. 342, 357-58 (2013). On the other hand, because Nunez-Valdez was not a new rule of constitutional law, IAC claims of incorrect advice about deportation consequences could be addressed

retroactively on collateral review of past convictions. Gaitan, 209 N.J. at 375. Therefore, while Padilla does not apply to this case, Nunez-Valdez does.

Our holding in State v. Brewster, 429 N.J. Super. 387 (App. Div. 2013) informs our analysis of the dispositive issue in this case. There, the defendant Moses Brewster, a non-citizen, entered a negotiated guilty plea in 1998 to third-degree possession of marijuana with intent to distribute in a school zone, N.J.S.A. 2C:35-7, and was sentenced to probation with 364 days in the county jail. Id. at 390-91. Although the judge did not specifically question the defendant about the possibility of deportation at the plea hearing, the risk of deportation was addressed in the written plea form defendant signed. Id. at 391. Brewster did not file a direct appeal and served his sentence. Ibid. Almost twelve years later, "[he] was arrested by federal authorities and detained . . . on a complaint for deportation based on his [1998] conviction." Ibid. In 2010, he filed a PCR petition, asserting his plea counsel was ineffective because when he inquired about immigration, plea counsel told him "he did[ not] think there would be any issue with immigration[.]" Id. at 391, 395.

The trial court denied Brewster's petition on procedural and substantive grounds, and we affirmed. Procedurally, we agreed with the trial court that the petition was untimely under Rule 3:22-12(a)(1), and Brewster failed to show

"excusable neglect for the late filing" or that "fundamental injustice" would result if his claims were "not considered on their merits." Id. at 398-99. "Nor did he file his petition within one year of the courts establishing a new 'constitutional right' or of his learning the 'factual predicate' that the conviction would have adverse immigration and deportation consequences[,]" as required under Rule 3:22-12(a)(2).[4] Brewster, 429 N.J. Super. at 399.

Addressing the merits, we explained:

> First, unlike Nunez-Valdez, [200 N.J. at 141], defense counsel here did not assure defendant that he would not be deported. Rather, he allegedly stated he did not think deportation would be an issue and he would discuss the matter with the prosecutor. Defendant has not shown this advice deviated from the "prevailing professional norms" in 1998 for a criminal defense attorney. . . .

> As discussed in Padilla, the fact that federal immigration laws as early as 1922 authorized the deportation of non-citizen drug offenders did not mean that those convicted were automatically deported. Until 1996, the sentencing court or the Attorney General of the United States retained discretion to recommend against or to waive the deportation provisions of federal immigration law. [559 U.S. at 359-63]. Even after 1996, deportation proceedings did

---

[4] Although Rule 3:22-12(a)(2) refers to a "second or subsequent petition" and Brewster's petition was his first, we noted that "the one-year supplemental period should apply as well to a first petition filed beyond the five-year limitation period of [Rule 3:22-12(a)(1)]" to avoid an "anomalous" result. Id. at 399, n.4.

not automatically follow a conviction for a narcotics offense, as the facts of this case reveal. Defendant was sentenced in 1998 and remained undisturbed by federal immigration officials for almost twelve years.

. . . .

We disagree with defendant's contention that competent representation required advice from his attorney that he "would" be deported as a result of his conviction. In 1998, on the cusp of modification of federal deportation law, defense counsel could not have reasonably predicted the certainty or even likelihood of defendant's deportation. In fact, it might have been incorrect at that time for defense counsel to have advised defendant he would surely, or likely, be deported and thus potentially have caused defendant to forego a favorable plea offer and to accept the likelihood of a longer term in state prison by conviction at trial. A longer prison sentence would not have saved defendant from deportation.

Accurate advice was provided to defendant in 1998 by the court's warning through its plea procedures that defendant "may" be deported as a result of his conviction. Considering the attendant circumstances in 1998, counsel's prediction that defendant would not have an immigration issue, in conjunction with the warning that he may be deported, was not unreasonable advice or outside the norms of the profession. As a factual matter, the information defendant received is not prima facie proof of ineffective assistance of counsel.

[Brewster, 429 N.J. Super. at 396-98.]

Applying these principles with a de novo standard of review, see State v. Harris, 181 N.J. 391, 420 (2004), we agree with the PCR court that plea counsel's advice to defendant, that he would not be deported, did not deviate from the "prevailing professional norms" in 2005 for a criminal defense attorney. Brewster, 429 N.J. Super. at 396.  Given counsel's advice, in conjunction with the warning defendant acknowledged on the plea form that he "may be deported by virtue of [his] plea," as well as the verbal warning provided to defendant by the court during the plea hearing that he "could get deported for this," like Brewster, defendant has failed to establish the deficiency prong of his IAC claim.

Likewise, we are satisfied that the PCR court's finding that defendant failed to establish the prejudice prong of his IAC claim is supported by the record.  Defendant's desire, as expressed at his sentencing, to be released from jail in order to spend time with his daughter dispels his subsequent certification submitted to support his PCR petition that avoiding deportation was his main concern and the prime motivator for his decision to accept the plea.  Courts must "evaluate the sufficiency of a belated claim of misadvice before granting a hearing.  In so doing, the court should examine the transcripts of the plea colloquy and sentencing hearing[.]"  Gaitan, 209 N.J. at 381.  "The subsequent

16

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Rather, [judges] should look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee v. United States, 582 U.S. ___, ___, 137 S. Ct. 1958, 1961 (2017).

As the PCR court noted, instead of facing a mandatory minimum prison sentence, defendant accepted a favorable pre-indictment plea offer for a sentence of probation conditioned upon serving county jail time. Defendant did not make a prima facie case that rejecting the highly favorable plea deal would have been rational under the circumstances. Because defendant failed to establish a prima facie case of IAC under Nunez-Valdez, we find no abuse of discretion in the denial of his PCR petition without an evidentiary hearing. Based on our decision, we need not address the procedural bar to defendant's PCR petition.[5]

---

[5] Defendant has not renewed on appeal his claim in the PCR court that he should have been allowed to withdraw his guilty plea under Slater, 198 N.J. at 157-58. Accordingly, we need not address the denial of the Slater motion.

A-3293-17T3

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3293-17T3